LOYAL ORDER OF MOOSE, ADRIAN LODGE 1034,
v. FAULHABER.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—LIENS—BONDS.
Matter of lien is not in issue where bond conditioned to comply
with final determination of case had been filed after entry of
decree granting equitable lien and filing of stipulation setting
aside mechanic's lien claimed by defendant architect for serv-
ices rendered.

2. CONTRACTS—CONSTRUCTION—INTENT.
A written agreement must be construed, if possible, in such
manner as to carry out the intent of the parties.

3. SAME—PAROL EVIDENCE.
Parol testimony was properly admitted to show the actual sit-
uation that existed to the knowledge of both parties when
they entered into an ambiguous contract.

4. SAME—ARCHITECTS—CONSTRUCTION OF CONTRACT.
Written contract for architect's services, containing no estimate
as to the cost of the contemplated work, may not be con-
strued as meaning that the architect was to receive his fee re-
gardless of whether any work was done in the remodeling of
plaintiff's building where such construction would mean the
practical elimination of clause of the contract prescribing
the basic rate for the determination of his fee.

5. BUILDING—REMODELING—ARCHITECTS—EQUITY.
Allowance of 10 per cent. of amount of cost of remodeling plain-
tiff's building pursuant to other plans than those prepared by
defendant architect is made to defendant on theory that work
done was in accordance with plans he had prepared, although

REFERENCES FOR POINTS IN HEADNOTES
[2] 12 Am Jur, Contracts, § 227.
[3] 20 Am Jur, Evidence, § 1159.
[4, 5] 3 Am Jur, Architects, §§ 11, 12.
[4, 5] Construction of contract for compensation of architect. 20
ALR 1356.

much less in scope than such plans contemplated, *held,* equitable, where it protects the legal rights of the parties, plaintiff does not complain and defendant cannot.

Appeal from Lenawee; Rathbun (G. Arthur), J. Submitted January 12, 1950. (Docket No. 75, Calendar No. 44,272.) Decided March 1, 1950.

Bill by Loyal Order of Moose, Adrian Lodge 1034, against Francis A. Faulhaber to set aside mechanic's lien. Decree setting aside lien, entering a money judgment secured by equitable lien. Defendant appeals. Affirmed.

*Paul T. Betz* (*John C. Timms,* of counsel), for plaintiff.

*James I. Moran,* for defendant.

CARR, J. Plaintiff brought suit in equity in the circuit court to set aside a mechanic's lien filed by defendant against property owned by plaintiff, and for an accounting covering the matter of its indebtedness to defendant. The answer to the bill asked that plaintiff's liability to defendant be fixed at the sum of $1,875, and that the lien be ordered discharged upon payment of said sum. Defendant also asked for such other relief as might be found equitable.

The controversy between the parties involves the interpretation of a contract executed on or about November 12, 1946. The pleadings and proofs in the case disclose that the plaintiff was at the time the owner of a lodge building in the city of Adrian, which it desired to enlarge and improve. Defendant was an architect engaged in the practice of his profession. The contract in question was, it appears, a standard form used by architects in making agreements with property owners for services. Follow-

ing a recital indicating the purpose of the parties, the agreement sets forth the provisions material in the present case as follows:

"The architect agrees to perform, for the above named work, professional services as hereinafter set forth.

"The owner agrees to pay the architect for such services a fee of 10 per cent. of the cost of the work, with other payments and reimbursements as hereinafter provided, the said percentage being hereinafter referred to as the 'basic rate.'

"The parties hereto further agree to the following conditions:

"1. The Architect's Services. The architect's professional services consist of the necessary conferences, the preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings, the drafting of forms of proposals and contracts; the issuance of certificate of payment; the keeping of account, the general administration of the business and supervision of the work.

"2.   *   *   *

"3. Separate Contracts. The basic rate applies to work let under a single contract. For any portions of the work let under separate contracts, on account of extra service thereby required, the rate shall be 4 per cent. greater, and if substantially all the work is so let the higher rate shall apply to the entire work but there shall be no such increase on any contracts in connection with which the owner reimburses the engineers' fees to the architect, or for articles not designed by the architect but purchased under his direction.

"4. Extra Services and Special Cases. If the architect is caused extra draughting or other expense due to changes ordered by the owner, or due to the delinquency or insolvency of the owner or contractor, or as a result of damage by fire, he shall be equitably paid for such extra expense and the service involved.

"Work let on any cost-plus basis shall be the subject of a special charge in accord with the special service required.

"If any work designed or specified by the architect is abandoned or suspended the architect is to be paid for the service rendered on account of it.

"5. Payments. Payments to the architect on account of his fee shall be made as follows, subject to the provisions of article 4:

"Upon completion of specification and general working drawings (exclusive of details) a sum sufficient to increase payments on the fee to 75 per cent. of the rate or rates of commission arising from this agreement, computed upon a reasonable cost estimated on such completed specifications and drawings, or if bids have been received, then computed upon the lowest bona fide bid or bids.

"From time to time during the execution of work and in proportion to the amount of service rendered by the architect, payment shall be made until the aggregate of all payments made on account of the fee under this article, but not including any covered by the provisions of article 4, shall be a sum equal to the rate or rates of commission arising from this agreement, computed upon the final cost of the work.

"Payments to the architect, other than those on his fee, fall due from time to time as his work is done or as costs are incurred."

In accordance with the contract defendant prepared certain plans and specifications which were submitted to the plaintiff's trustees. Two bids for the remodeling in accordance with such plans were submitted, the amounts thereof being $35,000 and $29,414, respectively. Neither bid was accepted. It is undisputed that plaintiff was unable to obtain the necessary funds to proceed with the work of remodeling the lodge in accordance with the plans submitted by defendant. It is the claim of the latter, however, that he is entitled to receive from plaintiff

under paragraph "5" of the contract, above quoted, 75 per cent. of the amount determined by applying the "basic rate" 10 per cent. specified in the contract to the lesser of the bids received.

The trial judge, after listening to the proofs of the parties, rejected defendant's claim as to the proper interpretation of the agreement, and held that the amount of defendant's fee must be computed on the cost to the owner incurred in carrying out the project. The proofs taken on the trial disclose that when plaintiff found it impossible to carry out the improvement in accordance with the plans submitted by defendant it proceeded under other plans. Whether or not the plans actually used were a modification of those submitted by defendant does not clearly appear from the record. For such purpose plaintiff obtained a loan in the sum of $5,000, and the trial court found that the total cost to it of the work actually done was $6,800. Such finding is not questioned. Based thereon the trial court decreed that defendant was entitled to the sum of $680 as the total amount of his fee. The sum of $300 had previously been paid to defendant, presumably under the agreement. The decree entered set aside the mechanic's lien but imposed an equitable lien in favor of the defendant on the property in question, in the sum of $380. After the entering of the decree the parties stipulated to set aside the mechanic's lien claimed by defendant, and also the equitable lien decreed, on the filing of a bond by plaintiff, conditioned to comply with the final determination of the case. The record indicates that the bond was filed, and consequently the matter of a lien is not now at issue.

Defendant has appealed from the decree entered, asserting that the trial judge was in error in construing the agreement in the manner above stated. Plaintiff has not appealed. The question at issue is,

in consequence, whether the provisions of the contract on which defendant relies should be construed in the manner claimed by him. Defendant does not rely on any claim of a right of recovery for the reasonable value of the work actually done by him in plaintiff's behalf. The record contains no testimony touching the actual value of such services. Neither does he assert that he is entitled to recover damages by way of loss of profits, or otherwise, based on any alleged breach of contract on plaintiff's part. It is defendant's position that he carried out the contract, as far as possible, and that he is entitled to recover thereunder the amount set forth in his answer.

The contract contained no estimate as to the cost of the contemplated work. Defendant contends that he was assured by plaintiff's representatives that whatever sum was found necessary would be forthcoming. However, defendant admitted in his testimony that he knew that the plans for the work would require approval by the Grand Lodge of the Loyal Order of Moose. He claims, however, that he was not advised that the Grand Lodge was in position to approve or disapprove the expenditure. He does not deny that he knew that plaintiff did not itself have the necessary funds, and that it would be necessary to obtain them from some source. The record does not justify a conclusion that he was given any assurances that arrangements had actually been made to obtain the money. In consequence, at the time he proceeded to prepare and submit the plans and specifications, he knew that the carrying out of the work was contingent, first, on approval of the plans by the Grand Lodge, second, on plaintiff's obtaining, from some source, the necessary funds to defray the cost of remodeling in accordance with such plans. He attended several meetings at which the subject was discussed by himself and the representatives of the lodge, and he could scarcely have

failed to understand that the ability to make the expenditures, required if the remodeling were done in accordance with his plans, was uncertain and contingent.

The contract between the parties, as written, is not free from ambiguities. The provision on which defendant relies, if taken literally, is inconsistent with other provisions emphasized by counsel for the plaintiff. The agreement must be construed, if possible, in such manner as to carry out the intent of the parties. *Moulton* v. *Lobdell-Emery Manufacturing Company,* 322 Mich 307. As bearing on the question of such intent at the time the contract was made, it was proper to show by parol testimony the actual situation that then existed to the knowledge of defendant as well as plaintiff. *Stevenson* v. *Brotherhoods Mutual Benefit,* 312 Mich 81; *Weber* v. *Cole,* 323 Mich 485. See, also, *Sharrar* v. *Wayne Savings Ass'n,* 246 Mich 225; *MacCrone* v. *Eckert,* 275 Mich 683.

Counsel have referred in their briefs to the decision of this Court in *Wetzel* v. *Roberts,* 296 Mich 114. There the plaintiff brought suit on a contract for architectural services, declaring also on the common counts in assumpsit. The contract between the parties was in writing and the provisions thereof were analogous to, and in some instances practically identical with, those set forth in the agreement between plaintiff and defendant in the case at bar. Defendant Roberts, as owner, agreed to pay plaintiff Wetzel a fee of 10 per cent. computed upon the cost of the work in connection with which plaintiff's services were to be performed. It was further stipulated that plaintiff was to receive 20 per cent. of his entire fee upon completion of the preliminary studies, and an additional 40 per cent. upon completion of specifications and general working drawings, the balance of the fee to be payable from time to time

in proportion to the amount of service rendered. There was also a provision, as in the contract under consideration in the case at bar, for increasing the basic rate on which the architect's fee was to be determined from 10 per cent. to 14 per cent. if the work was actually let under different contracts, thus necessitating a greater measure of supervision. The bid received, based on the plans, was approximately $28,000. Because of the amount of the required expenditure, no contract was let on the plans prepared by plaintiff Wetzel. Subsequently defendant remodeled the building according to other plans. Plaintiff's suit was based on the theory that he was entitled to recover 60 per cent. of his fee, computed on the bid received. Testimony was received by the trial court to show that plaintiff had been advised that the actual cost of the proposed improvement could not exceed $15,000. The written agreement executed by the parties contained no limitation on such cost. On appeal this Court affirmed the judgment in favor of defendant, saying in part:

"In spite of obscurity and contradiction, it appears that the architect's fees are based upon a percentage, to be computed upon the cost of the work; and the cost of the work is to be based on the amount specified in the executed construction contract.

"In this case no contract for the construction work was ever executed. When Roberts received the bid on the plans prepared by plaintiff, it amounted to $28,000. This was so much greater than the amount that he had planned upon, and so in excess of the limitation of expense which was communicated by Heartt to Wetzel, that Roberts refused to go ahead with the proposition. He later remodeled the building according to another plan. Plaintiff sued for 60 per cent. of a fee based upon 10 per cent. of the bid of $28,000, claiming that such sum was due him under the contract.

"There is nothing in the terms of the contract which provides that the total fee of the architect would be 10 per cent. of the amount of a bid. The fee depends upon the letting of a contract. The architectural fees were based upon the total amount that it would cost to do the work, according to the terms of the construction contract. Apparently the form of contract here used was drafted to cover a case where the owner actually let a building contract; but it did not cover the case before us, where no building contract was ever executed. To sustain the claim of plaintiff it would be necessary to hold that no matter how large the bid for doing the work, Roberts would have been obligated to pay an architectural fee based upon the amount of such a bid. The contract does not so provide, and Roberts did not so agree.

"Furthermore, it appears that there was an oral condition precedent to the execution of the contract. Plaintiff had been advised before he commenced to prepare the plans and specifications that the cost of the improvements was not to exceed $15,000. In this regard it is of no consequence whether Heartt, who informed Wetzel of this limitation, was the agent of plaintiff or of Roberts. The evidence shows that, after being advised of the limitation, plaintiff drafted the plans and that there was no subsequent modification of this condition precedent. See *Cleveland Refining Co.* v. *Dunning,* 115 Mich 238; *Rothstein* v. *Weeks,* 224 Mich 548.

"Plaintiff declared on the common counts as well as upon the contract. He does not appear to insist upon recovery on *quantum meruit;* but it is sufficient to say that there was no proof in the case of the value of his services to sustain a recovery on the common counts."

We think the reasons given by the Court for denying recovery in *Wetzel* v. *Roberts, supra,* are applicable under the facts in the case at bar. If defendant is correct in his claim as to the interpre-

tation of his agreement with the plaintiff, the conclusion would necessarily follow that he would be entitled to a fee based either on estimated cost of the improvement under plans and specifications prepared by him, or on the basis of the lowest bona fide bid received for the doing of the work contemplated thereby, without reference to the amount of the estimate, or the bid, or the letting of any contract. It may not be assumed that the parties intended such a possible result. Doubtless they thought at the time the agreement was made, all parties acting in good faith, that a contract might be made with a responsible contractor under which the improvement would be accomplished. In such event defendant's fee was to be based on the cost of the work to the plaintiff. The agreement may not be construed as meaning that the defendant was to receive his fee regardless of whether any work was done in the remodeling of plaintiff's building. Such result would mean the practical elimination, so far as this case is concerned, of the clause of the contract prescribing the basic rate for the determination of the architect's fee.

The trial court, in allowing defendant the sum of $680, apparently acted on the theory that the work actually done on the building was in accordance with the plans and specifications that defendant had prepared, although much less in scope than such plans contemplated. Plaintiff does not question the action of the trial court in this regard, and defendant is not in position to complain. It is apparent from the opinion of the trial judge that he sought to determine the controversy in such manner as to protect the legal rights of the parties and to bring about an equitable result. His disposition of the controversy should not be set aside by this Court.

The decree of the trial court is affirmed, with costs to the plaintiff.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.